UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **KARETEK HOLDINGS LLC,**<br><br>Plaintiff<br><br>v.<br><br>**ALAMO DRAFTHOUSE CINEMAS, LLC,**<br><br>Defendant | **Case No. 6:20-cv-00681**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR INFRINGEMENT OF PATENT

Now comes, Plaintiff, Karetek Holdings LLC ("Plaintiff"), by and through undersigned counsel, and respectfully alleges, states, and prays as follows:

### NATURE OF THE ACTION

1. This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") to prevent and enjoin Defendant Alamo Drafthouse Cinemas, LLC (hereinafter "Defendant"), from infringing and profiting, in an illegal and unauthorized manner, and without authorization and/or consent from Plaintiff from U.S. Patent No 7,373,515 ("the '515 Patent" or the "Patent-in-Suit"), which is attached hereto as Exhibit A and incorporated herein by reference, and pursuant to 35 U.S.C. §271, and to recover damages, attorney's fees, and costs.

### THE PARTIES

2. Plaintiff is a Texas limited liability company with its principal place of business at 15922 Eldorado Parkway – Suite 500-1711, Frisco, Texas 75035.

1

3. Upon information and belief, Defendant is a corporation organized under the laws of Texas, having a principal place of business at 13729 Research Boulevard – Suite 735, Austin, Texas 78750. Upon information and belief, Defendant may be served with process c/o Capitol Corporate Services, Inc., 206 East 9th Street – Suite 1300, Austin, Texas 78701.

4. Plaintiff is further informed and believes, and on that basis alleges, that Defendant operates the website www.drafthouse.com. Defendant derives a portion of its revenue from sales and distribution via electronic transactions conducted on and using at least, but not limited to, its Internet website located at www.drafthouse.com, and its incorporated and/or related systems (collectively the "Drafthouse Website"). Plaintiff is informed and believes, and on that basis alleges, that, at all times relevant hereto, Defendant has done and continues to do business in this judicial district, including, but not limited to, providing products/services to customers located in this judicial district by way of the Drafthouse Website.

## JURISDICTION AND VENUE

5. This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§1 *et seq*.

6. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a).

7. This Court has personal jurisdiction over Defendant by virtue of its systematic and continuous contacts with this jurisdiction and its residence in this District, as well as because of the injury to Plaintiff, and the cause of action Plaintiff has risen in this District, as alleged herein.

8. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in this forum state and in this judicial District; and (iii) being formed in this District.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b) because Defendant resides in this District under the Supreme Court's opinion in *TC Heartland v. Kraft Foods Group Brands LLC,* 137 S. Ct. 1514 (2017) through its incorporation, and regular and established place of business in this District.

## FACTUAL ALLEGATIONS

10. On May 13, 2008, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '515 Patent, entitled "MULTI-FACTOR AUTHENTICATION SYSTEM" after a full and fair examination. The '515 Patent is attached hereto as Exhibit A and incorporated herein as if fully rewritten.

11. Plaintiff is presently the owner of the '515 Patent, having received all right, title and interest in and to the '515 Patent from the previous assignee of record. Plaintiff possesses all rights of recovery under the '515 Patent, including the exclusive right to recover for past infringement.

12. To the extent required, Plaintiff has complied with all marking requirements under 35 U.S.C. § 287.

13. The invention claimed in the '515 Patent comprises a multi-factor authentication system and method.

14. Claim 4 of the '515 Patent recites a method for gaining access by a user to a network resource.

15. Claim 4 of the '515 Patent states:

> "4. A method for gaining access by a user to a network resource, comprising the steps of
> (a) communicating a PIN and a first primary identification over an ancillary communications network to an authentication authority;
> (b) receiving an encrypted passcode over the ancillary communications network from the authentication authority;
> (c) decrypting the passcode using a key of an asymmetric key pair, and
> (d) communicating the passcode and a user ID over a communications network to an access authority." See Exhibit A.

16. The '515 Patent identified computer-centric or internet-centric technological problems that needed to be solved. See generally Ex. A at Background, Col.1-2.

17. More particularly, the '515 Patent identified that a user ID and password are often required in order for a suspect user to gain access to a network resource from an access authority of a computer network. Ex. A. at Col. 1:24-29. The access authority may comprise a server of the computer network, which grants access once the user ID has been authenticated using the password received from the suspect user. Ex. A at Col. 1:29-32. The access authority may include security privileges for granting specific types of access by authenticated users, and the access authority may additionally perform the authentication of suspect users. Ex. A at Col. 1:32-36.

18. The '515 Patent identified that in order to reduce confusion, "users typically choose easy-to-remember-passwords. Otherwise, users tend to forget complex passwords

and record the passwords in easily accessible areas for later reference. For example, many users maintain a list of user IDs and passwords in a spreadsheet or text file on their computer or personal digital assistant. Programs even have been written to help maintain user ID and password combinations." Ex. A at Col. 1:39-47.

19. The '515 Patent identified that computer-centric problems or internet-centric problems existed as a result of the easy to remember passwords chosen by user.

20. Namely, "Enterprises, such as corporations, Internet service providers, portals, application service providers (ASPs), e-commerce providers, online financial services, etc., must manage user IDs and passwords for their users. Allowing users to employ simple passwords reduces security at a time when security attacks are increasing and are increasingly expensive when they occur. On the other hand, enforcing the use of complex passwords and requiring passwords to be changed frequently increases security, but also increases cost in the form of help desk and customer service calls for the resetting of passwords. The systems that have been developed to allow users to use personal information to reset a password automatically without human intervention tend to be less secure because personal information can be guessed or obtained surreptitiously. Some systems, for example, use information from credit reports—despite the fact that credit bureaus are in the business of proactively selling that information." Ex. A. at Col. 1:47-65.

21. There were prior attempts to overcome these problems.

22. Namely, the prior art provided single sign-on systems "in which a user is able to authenticate to a single trusted authentication server, which then propagates that authentication to multiple access authorities. While the use of a single authentication

server eases the user burden of remembering multiple passwords for accessing various network resources, such a system typically is limited to accessing network resources of a single enterprise. Such a system also is susceptible to a security problem known as "keys to the kingdom." If an attack gains access to the user ID and password required to authenticate to the authentication server, then access to all network resources relying upon that authentication server are compromised." Ex. A at Col. 1:67-Col. 2:11.

23. Additionally, in the prior arte there were stronger forms of authenticating user IDs. Namely, "hardware token such as USB tokens and time-based tokens—RSA's SecureID is an example—are now being utilized in some multi-factor authentication systems wherein these tokens are able to uniquely identify themselves. For example, a token utilizing physical access to a device and knowledge of a shared secret, such as a PIN, can construct a rotating key that matches a synchronized server key. Such a system is a "two-factor" authentication system because it requires something the user has, i.e., the token, in addition to something the user knows, i.e., the password. Unfortunately, each token in one of these two-factor authentication system is expensive, subject to loss, and typically restricted to use with one or more network resources of a particular computer network." Ex. A at Col. 2:12-28.

24. Claim 4 of the '515 Patent addressed the need for an improved multi-factor authentication system that overcomes one or more of the aforementioned computer-centric or internet-centric disadvantages of prior art authentication systems.

25. Specifically, to deal with each token in these two-factor authentication system being expensive, subject to loss, and typically restricted to use with one or more network resources of a particular computer network, the method of Claim 4 in the '515

6

patent requires (a) communicating a PIN and a first primary identification over *an ancillary communications network* to *an authentication authority*; (b) receiving an encrypted passcode over the ancillary communications network from the authentication authority; (c) decrypting the passcode *using a key of an asymmetric key pair*; and (d) communicating the *passcode and a user ID* over *a communications* network to *an access authority*. These specific elements (i.e., the ancillary communication network, the authentication authority, the use of a key of an asymmetric key pair, the passcode and a user ID, a communication network, and an access authority), <u>as combined</u>, accomplish the desired result decreasing cost, reducing the likelihood of, and may not be restricted to use with one or more network resources of a particular computer network. Further, these specific elements also accomplish these desired results to overcome the then existing problems in the relevant field of network communication systems. *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (holding that improving computer security can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem). See also *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018); *Core Wireless Licensing v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018); *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303 (Fed. Cir. April 30, 2020).

26. Claims need not articulate the advantages of the claimed combinations to be eligible. *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020).

27. These specific elements of Claim 4 of the '515 Patent (i.e., the ancillary communication network, the authentication authority, the use of a key of an asymmetric

7

key pair, the passcode and a user ID, a communication network, and an access authority) were an unconventional arrangement of elements because the prior art methodologies would simply use tokens to identify themselves by a rotating key that that matches a synchronized server key. By adding the specific elements (i.e., the ancillary communication network, the authentication authority, the use of a key of an asymmetric key pair, the passcode and a user ID, a communication network, and an access authority), Claim 4 of the '515 Patent was able to unconventionally generate a method for gaining access by a user to a network resource. *Cellspin Soft, Inc. v. FitBit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019)

28. Further, regarding the specific non-conventional and non-generic arrangements of known, conventional pieces to overcome an existing problem, the method of Claim 4 in the '515 Patent provides a method of gaining access to network that would not preempt all ways of confidentially authenticating a user because the data-rate control signal is based on the ancillary communication network, the authentication authority, the use of a key of an asymmetric key pair, the passcode and a user ID, a communication network, and an access authority, any of which could be removed or performed differently to permit a method of gaining access to network in a different way. *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016); See also *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).

29. Based on the allegations, it must be accepted as true at this stage, that Claim 4 of the '515 Patent recites a specific, plausibly inventive way of gaining access to a network and using specific protocols rather than the general idea of confidentially authenticating a user. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir.

2019), *cert. denied sub nom. Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907, 205 L. Ed. 2d 459 (2020).

30. Alternatively, there is at least a question of fact that must survive the pleading stage as to whether these specific elements of Claim 4 of the '515 Patent (i.e., the ancillary communication network, the authentication authority, the use of a key of an asymmetric key pair, the passcode and a user ID, a communication network, and an access authority) were an unconventional arrangement of elements. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) See also *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911, 205 L. Ed. 2d 454 (2020).

31. Defendant commercializes, inter alia, methods that perform all the steps recited in at least one claim of the '515 Patent. More particularly, Defendant commercializes, inter alia, methods that perform all the steps recited in Claim 4 of the '515 Patent. Specifically, Defendant makes, uses, sells, offers for sale, or imports a method that encompasses that which is covered by Claim 4 of the '515 Patent.

## **DEFENDANT'S PRODUCT(S)**

32. Defendant offers solutions, such as the "OAuth" system (the "Accused Instrumentality"), which practices a method for gaining access by a user to a network resource. A non-limiting and exemplary claim chart comparing the Accused Instrumentality of Claim 4 of the '515 Patent is attached hereto as Exhibit B and is incorporated herein as if fully rewritten.

33. As recited in Claim 4, a system, at least in internal testing and usage, utilized by the Accused Instrumentality practices a method for gaining access by a user to a network resource. See Ex. B.

9

34. As recited in one step of Claim 4, the system, at least in internal testing and usage, utilized by the Accused Instrumentality practices a method comprising communicating a PIN and a first primary identification over an ancillary communications network to an authentication authority. See Ex. B.

35. As recited in another step of Claim 4, the system, at least in internal testing and usage, utilized by the Accused Instrumentality practices a method comprising receiving an encrypted passcode over the ancillary communications network from the authentication authority. See Ex. B.

36. As recited in another step of Claim 4, the system, at least in internal testing and usage, utilized by the Accused Instrumentality practices a method comprising decrypting the passcode using a key of an asymmetric key pair. See Ex. B.

37. As recited in another step of Claim 4, the system, at least in internal testing and usage, utilized by the Accused Instrumentality practices a method comprising communicating the passcode and a user ID over a communications network to an access authority. See Ex. B.

38. The elements described in the preceding paragraphs are covered by at least Claim 4 of the '515 Patent. Thus, Defendant's use of the Accused Instrumentality is enabled by the method described in the '515 Patent.

## INFRINGEMENT OF THE PATENT-IN-SUIT

39. Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs

40. In violation of 35 U.S.C. § 271, Defendant is now, and has been directly infringing the '515 Patent.

41. Defendant has had knowledge of infringement of the '515 Patent at least as of the service of the present Complaint.

42. Defendant has directly infringed and continues to directly infringe at least one claim of the '515 Patent by using, at least through internal testing or otherwise, the Accused Instrumentality without authority in the United States, and will continue to do so unless enjoined by this Court. As a direct and proximate result of Defendant's direct infringement of the '515 Patent, Plaintiff has been and continues to be damaged.

43. Defendant has induced others to infringe the '515 Patent by encouraging infringement, knowing that the acts Defendant induced constituted patent infringement, and its encouraging acts actually resulted in direct patent infringement.

44. By engaging in the conduct described herein, Defendant has injured Plaintiff and is thus liable for infringement of the '515 Patent, pursuant to 35 U.S.C. § 271.

45. Defendant has committed these acts of infringement without license or authorization.

46. As a result of Defendant's infringement of the '515 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

47. Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court. As such, Plaintiff is entitled to compensation for any continuing and/or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

48. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim charts that it provides with this Complaint. The claim chart depicted in Exhibit B is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

## DEMAND FOR JURY TRIAL

49. Plaintiff demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a. That Defendant be adjudged to have directly infringed the '515 Patent either literally or under the doctrine of equivalents;

b. An accounting of all infringing sales and damages including, but not limited to, those sales and damages not presented at trial;

c. That Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be permanently restrained and enjoined from directly infringing the '515 Patent;

d. An award of damages pursuant to 35 U.S.C. §284 sufficient to compensate Plaintiff for the Defendant's past infringement and any continuing or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

e. An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. §284;

f. That Defendant be directed to pay enhanced damages, including Plaintiff's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. §285; and

g. That Plaintiff be granted such other and further relief as this Court may deem just and proper.

Dated: July 27, 2020

Together with:

SAND, SEBOLT & WERNOW CO., LPA

Howard L. Wernow
(*pro hac vice forthcoming*)

Aegis Tower – Suite 1100
4940 Munson Street NW
Canton, Ohio 44718
Phone: 330-244-1174
Fax: 330-244-1173
Howard.Wernow@sswip.com

Respectfully submitted,

*/s/ Raymond W. Mort, III*
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com

**THE MORT LAW FIRM, PLLC**
100 Congress Ave, Suite 2000
Austin, Texas 78701
Tel/Fax: (512) 865-7950

**ATTORNEYS FOR PLAINTIFF**